Sharon **MELSON**, et al., **Plaintiffs,**

v.

The **KROGER COMPANY**, et al., **Defendants.**

No. C–3–82–061.

United States District Court, S.D. Ohio, W.D.

Nov. 2, 1982.

Janice L. Jessup, Dayton, Ohio, for plaintiffs.

Paul J. Winterhalter, Dayton, Ohio, for defendants Kroger Co. and Jackson.

James D. Dennis, Asst. City Atty., Dayton, Ohio, for defendants Bogan, O'Connor, Bent, Wheeler and Doe.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS IN PART, AND OVERRULING SAME IN PART; DEFENDANTS TO HAVE TWENTY DAYS TO FILE MOTION FOR SUMMARY JUDGMENT

RICE, District Judge.

Plaintiffs filed this civil rights action in response to an encounter with four members of the Dayton police force, during which encounter, Plaintiffs contend, said officers violated their constitutional rights. Five of the seven named Defendants (the four officers and Chief of Police Grover O'Connor) have filed a motion to dismiss (doc. # 6) the complaint, pursuant to Fed. R.Civ.P. 12(b). For the reasons set forth below, said motion is sustained in part, and overruled in part. Defendants will have twenty (20) days after receipt of this Entry in which to file motions for summary judgment.

## I. SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiffs Sharon Melson, Alberta Bonner, Curita Bonner, Jerry Trice, and Mary Trice filed this action on February 25, 1982. Named as Defendants are the Kroger Company, Earl Jackson, a Kroger's employee, four Dayton police officers (R.C. Bogan, Barbara Bent, J.E. Wheeler, Policeman "John First Doe"), and O'Connor.

The factual allegations in the complaint concern an incident of October 1, 1981. Plaintiffs allege the following: at about 4:00 p.m. on that date, they were shopping at the Kroger Store at 1451 Troy Street in Dayton, and thereafter left the store to place their groceries in their car located in the store parking lot. After they left, Jackson called the Dayton police, reporting that "four black men were at the parking lot ... with a gun on the seat of the automobile." The four previously mentioned police officers were dispatched to Kroger's in response to the call, and Jackson "directed them to apprehend and detain" the Plaintiffs. At about 5:30 p.m., even though Plaintiffs "were lawfully and properly conducting themselves" in the parking lot and adjacent street, they were nevertheless "approached and apprehended" by the police officers. The officers ordered Plaintiffs to pull their car over to the curb, using a loud speaker system and displaying their weapons; they were ordered to exit the car "without just or probable cause to do so." When Plaintiffs were unable to exit as swiftly as the officers desired, the officers pointed their weapons "directly at the Plaintiffs and causing Curita Bonner, a minor child to become hysterical with fear ...." Furthermore, the officers "forcibly and violently seized and assaulted Plaintiffs" and "conducted unlawful searches of the person, purses and automobile of the Plaintiffs," without probable cause. After discovering that the alleged gun was a harmonica owned by Jerry Trice, a blind Plaintiff, said officers "threatened Sharon Melson with continued detention if she was unable to produce her driver's license." No charges were ever filed against Plaintiffs, and these incidents caused them pain and suffering, and emotional shock and distress. Complaint, ¶¶ 12–23.

Plaintiffs alleged that Chief O'Connor "while acting in concert with all defendants named herein, hired, ordered, place (sic) upon the streets of the City of Dayton, Ohio, police officers who were improperly trained and who, displaying a lack of judgment, used their status as police officers under the direction of the Defendant, Gro-

ver O'Connor" to commit the alleged acts. ¶ 28(a). They also allege that Defendants "intentionally engaged in malicious, wilfull and wanton conduct and recklessly caused Plaintiffs to be assaulted," ¶ 30, and that said conduct was "motivated and intended because of Plaintiffs' race." ¶ 32.

The complaint then sets forth six Counts. Count I alleges that said acts violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. Count II refers to deprivation of Eighth Amendment rights, while the third Count alleges deprivation of rights under the Thirteenth Amendment and 42 U.S.C. § 1981. Count IV also alleges that Defendants violated the Thirteenth Amendment. Finally, in Counts V and VI, Plaintiffs allege that Defendants acted "in concert" to deprive them of their civil rights, in violation of 42 U.S.C. §§ 1985 & 1986, respectively.

Plaintiffs pray for monetary and injunctive relief. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1341 & 1343,[1] and the Court's pendent jurisdiction. The causes of action are said to arise under the aforementioned constitutional amendments, and 42 U.S.C. §§ 1981, 1983, 1985, & 1986. ¶ 3.

## II. DEFENDANTS' MOTION TO DISMISS IS SUSTAINED IN PART AND OVERRULED IN PART

 Five of the named Defendants have moved to dismiss the complaint (doc. # 6), pursuant to Fed.R.Civ.P. 12(b)(2), (5) & (6). In a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations in the complaint, *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976), and such a motion should not be sustained unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Neil v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981), *cert. granted on other grounds,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282

(1982). The Court can also examine the record to determine if service of process was properly made. 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 3151 at 582–83 (1969). With these standards in mind, the Court turns toward the grounds advanced in said motion.

## A. ALLEGATIONS WITH RESPECT TO O'CONNOR

 Defendants initially argue that, whatever may be the underlying constitutional violations arising from the October 1st incident (discussed *infra*), there are no allegations that Chief O'Connor directly participated in the alleged unlawful conduct. Such direct participation is a prerequisite for liability under the civil rights laws. *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Wilson v. Beebe,* 612 F.2d 275, 275–76 (6th Cir.1980) (per curiam); *Jones v. Denton,* 527 F.Supp. 106, 109 (S.D.Ohio 1981).

Plaintiffs concede that they make no allegations *directly* implicating Chief O'Connor in the October 1st incident. But they do allege, as noted above, that he "hired, ordered," and placed "improperly trained" police officers upon the streets of Dayton. Defendants characterize this allegation as one of "negligently" hiring and training officers, Defendants' Motion to Dismiss, doc. # 6, p. 2, and conclude that such allegations are insufficient. *See Hays, supra,* 668 F.2d at 872–73; *Jones v. Denton, supra.*

The Court cannot agree with Defendants' characterization of the complaint. The allegations with respect to Chief O'Connor do not refer to "negligent" acts. *Hays* indeed stated that liability could not be predicated on mere negligent hiring or training. But the Court went on to state that a supervisory official could be

> held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or

---

1. Plaintiffs undoubtedly meant to cite § 1331, not § 1341. The latter section is the Tax Injunction Act which, of course, has no relevance to this matter. The Court, unless informed to the contrary by Plaintiffs' counsel, will treat the complaint as if it cited § 1331.

grossly negligent that future police misconduct is almost inevitable . . . .

*Hays, supra,* 668 F.2d at 874.

The allegations in the complaint, taken as true, meet this standard, albeit barely so. Plaintiffs do not allege that there was a "complete failure" to train. However, they do allege that Chief O'Connor hired and placed "improperly trained" police officers on duty, who displayed a "lack of judgment . . . under the direction" of O'Connor. Complaint, ¶ 28(a). They also allege that all Defendants engaged in "reckless" conduct. ¶ 30. These allegations, taken together, satisfy the *Hays* test that training must be "so reckless or grossly negligent that future police misconduct is almost inevitable." Accordingly, to the extent that the allegations with respect to the other Defendants who directly participated in the October 1st incident survive a motion to dismiss (discussed *infra*), O'Connor's motion to dismiss must be, and hereby is, overruled.

## B. SERVICE OF PROCESS ON DEFENDANT DOE

■ Plaintiffs were unable to identify one of the four police officers involved in the October 1st incident, and named him as a "Doe" Defendant. All parties acknowledge, and the record reflects that said Defendant has not been served with process. Based on this failure to serve process, Defendants argue that the action should be dismissed with respect to him, under Rule 12(b)(5).[2]

However, Plaintiffs contend that despite "due diligence," they have been unable to ascertain the name of the Doe Defendant. They suggest that his identity might be discovered in the future. Since it is "reasonably conceivable" that Plaintiffs could learn the true identity of the Doe Defendant in the future, *Croy v. Skinner,* 410 F.Supp. 117, 132 (N.D.Ga.1976), and properly serve him, the Court will, *at this time,* overrule the motion to dismiss Doe. If and

when Plaintiffs learn Doe's identity, he could be properly served under Fed.R.Civ.P. 4(d)(1). *See also Maclin v. Paulson,* 627 F.2d 83, 87–88 (7th Cir.1980).

## C. ALLEGED DENIAL OF FOURTH AMENDMENT RIGHTS

The gravamen of Plaintiffs' cause of action under Count I is that Defendants' actions on October 1st invaded their Fourth Amendment right to be free from "unreasonable searches and seizures." Courts have entertained suits, under the civil rights laws, to remedy alleged invasions of Fourth Amendment rights by police. The initial defense to such allegations, pressed by Defendants herein, is that the alleged acts comported with the law of search and seizure. *See Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961); *Wolfel v. Sanborn,* 555 F.2d 583, 593 (6th Cir.1977); *Toins v. Ignash,* 534 F.Supp. 452 (E.D.Mich.1982). *See generally* 1 W. LaFave, Search and Seizure, § 1.8(a) (1978).

Defendants herein argue that, even taking the allegations in the complaint as true, the acts by the four officers did not violate the Fourth Amendment. They contend that the initial investigatory stop of the car in question was based upon probable cause, and that further investigation of the situation was permissible. *United States v. Brigoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1974); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Smith,* 574 F.2d 882 (6th Cir.1978). Ordering Plaintiffs to exit the car was reasonable and lawful, *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), as was the drawing of weapons by the officers. *United States v. Russel,* 546 F.2d 839 (9th Cir.1976). Without conceding that position, Plaintiffs allege facts sufficient to indicate that they have standing to object to a search of the car, *cf. United States v. Salvucci,* 448 U.S. 83, 100 S.Ct.

---

**2.** As previously noted, Defendants rely on both Rule 12(b)(2) and 12(b)(5) in arguing that the action against Doe should be dismissed. However, when Defendants are only challenging the

manner (or lack) of service (as herein), rather than the lack of jurisdiction as such, it is proper to rely only upon Rule 12(b)(5). 5 C. Wright & A. Miller, *supra,* § 1353 at 578–79.

2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the warrantless search of the car for weapons was permissible based on the "exigent circumstances." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Preston,* 468 F.2d 1007 (6th Cir.1972). Finally, the threatened detention of Plaintiff Melson was lawful, since she failed to have or produce a driver's license. Ohio Rev.Code § 4507.02 & .35.

■ The Court cannot agree that applying Fourth Amendment law to the allegations in the complaint necessarily absolves Defendants of all liability. The general standard against which the officers' conduct must be measured is whether their stop of the car and investigation of possible criminal behavior was "reasonable" and "appropriate," in light of all the circumstances and the facts known by the police at the time. *Adams v. Williams, supra,* 407 U.S. at 145–46, 92 S.Ct. at 1923; *United States v. Smith, supra,* 574 F.2d at 884–85; *United States v. Acklen,* 690 F.2d 70 at 72 (6th Cir.1982). Defendants are perhaps on strongest ground in asserting that the initial stop and request that Plaintiffs exit the car was lawful. The information related to the officers by Jackson, particularly the claim of the possession of a gun, reasonably supports an initial stop of the vehicle, and a request that Plaintiffs exit same. *United States v. Smith, supra; Pennsylvania v. Mimms, supra.*

However, the officers allegedly went beyond such arguably lawful activities. First, it is not clear that the subsequent search of the "person, purses, or automobile of the Plaintiffs," Complaint, ¶ 20, by the officers was lawful. Plaintiffs allege specifically that the car in question was "theirs." Complaint, ¶¶ 13, 17, 25. This allegation seems sufficient to give Plaintiffs standing to contest the validity of the search of the same. *Salvucci, supra.* According to the complaint, at the time Plaintiffs exited the car,

the officers would have observed two adult women, one minor, and one adult man, who was legally blind. Aside from the fact that these individuals do not match the description originally given, over the phone, by Jackson, it does not *automatically* follow that "exigent circumstances" existed so as to justify a warrantless search of the "person, purses, or automobile" of the Plaintiffs. The Court also notes that the search was allegedly conducted during daylight hours. Taken together, these alleged facts might support a finding of an unlawful search.

■ Second, even if said search was lawful, Plaintiffs allege various facts which indicate that the officers may have used excessive force in carrying out their otherwise lawful actions. Civil rights violations may be predicated, in the context of searches and seizures, on the alleged use of excessive force by the police officers involved in same. *See, e.g., Prosise v. Haring,* 667 F.2d 1133, 1136 (4th Cir.1981), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 205, 74 L.Ed.2d 164 (1982); *Black v. Stephens,* 662 F.2d 181, 188 (3d Cir.1981); *cert. denied,* —— U.S. ——, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Smith v. Hearod,* 498 F.2d 663 (5th Cir.1974). *See also, Tefft v. Seward,* 689 F.2d 637 at 639 n. 2 (6th Cir.1982), ("Allegations of assault and battery and use of excessive force are sufficient to state a constitutional violation when such actions were severe."). Plaintiffs herein allege that the officers displayed their weapons "directly" at them in a threatening manner, and "forcibly and violently seized and assaulted" them. These allegations, if proven, could support a finding of the use of excessive force, particularly given two of the four Plaintiffs involved (a minor and a blind man).

For these reasons, the Court holds that Defendants' motion to dismiss with respect to Count I of the complaint must be, and hereby is, overruled.[3]

---

3. This result is not changed by considering the citations of authority in Defendants' Reply Memorandum, doc. # 11. In particular, both *Baker v. McCollum,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) and *Sell v. Price,*

527 F.Supp. 114 (S.D.Ohio 1981) held that liability under § 1983 could not be predicated *solely* on a claim of "false arrest." The complaint herein does not explicitly make such a claim, and even if it did, it also alleges unlawful

### D. SUFFICIENCY OF ALLEGATION UNDER SECTION 1981

Plaintiffs allege in Count II of their complaint that the above-described acts violated 42 U.S.C. § 1981. Defendants argue that the mere claim that said acts were "motivated and intended because of Plaintiffs' race," Complaint, ¶ 32 (earlier alleged to be black, ¶ 15), without more, does not state a claim under § 1981. Plaintiffs make no allegation, Defendants point out, that they were treated any differently by the officers due to their race.

■ Defendants' arguments are not well taken. The Supreme Court recently held, confirming the prevailing view in the lower courts, that liability under § 1981 "is limited to conduct motivated by a discriminatory purpose." *General Building Contractors Assoc., Inc. v. Pennsylvania,* —— U.S. ——, ——, 102 S.Ct. 3141, 3148, 73 L.Ed.2d 835 (1982). The mere allegation that the officers' conduct was "motivated" by Plaintiffs' race is sufficient to state a cause of action under § 1981, and thus survive a motion to dismiss. *Mahone v. Waddle,* 564 F.2d 1018, 1028 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Olivares v. Martin,* 555 F.2d 1192, 1196 (5th Cir.1977); *Hudson v. Teamsters Local No. 957,* 536 F.Supp. 1138, 1146 (S.D.Ohio 1982). This is not to say, of course, that Plaintiffs will not need to demonstrate, at some point later in this litigation, that the officers were animated by racial motives. *Howard Security Services, Inc. v. Johns Hopkins Hospital,* 516 F.Supp. 508, 514 (D.Md.1981).

For these reasons, Defendants' motion to dismiss the § 1981 count must be, and hereby is, overruled.

### E. REMAINING ALLEGATIONS IN THE COMPLAINT

Plaintiffs' other allegations in Counts II through VI of the complaint can be disposed of in short order.

■ Plaintiffs can state no claim under the Eighth Amendment. There must be a "formal adjudication of guilt" by the acts separate and apart from a false arrest state before the "cruel and unusual" punishment clause of said Amendment comes into play. *Watson v. McGee,* 527 F.Supp. 234, 240 (S.D.Ohio 1981) (quoting *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1407 n. 40 (1977)). Plaintiffs have alleged no facts to indicate that Defendants were part of any "formal adjudication of guilt" of the Plaintiffs.

■ Similarly, Plaintiffs can state no claim under the Thirteenth Amendment. Government action must be "fairly characterized as a badge or incident of slavery" to be cognizable as a violation of said Amendment. *City of Memphis v. Greene,* 451 U.S. 100, 124–26, 101 S.Ct. 1584, 1598, 67 L.Ed.2d 769 (1981). Plaintiffs have not alleged facts which indicate that Defendants' actions toward them were related to slavery.

■ Finally, Plaintiffs have failed to state a claim under 42 U.S.C. §§ 1985 & 1986. Arguably, Plaintiffs have sufficiently alleged the existence of a racially based discriminatory animus on the part of Defendants, so as to be within the ambit of § 1985(3). *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Browder v. Tipton,* 630 F.2d 1149, 1151 (6th Cir.1980). However, the Court need not reach this issue, since Plaintiffs have not sufficiently alleged the existence of a conspiracy in the first instance. Mere conclusory allegations of the existence of a conspiracy (*e.g.,* Complaint, ¶¶ 24, 28, 44–49) will not suffice to state a cause of action under § 1985. *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir.1971). Nor can an action be stated under § 1986, since that provision is only derivative to a § 1985 action. *Browder v. Tipton, supra,* 630 F.2d at 1155.

For these reasons, Defendants' motion to dismiss is sustained in part, to the extent that Plaintiffs have attempted to state causes of action under the Eighth and Thirteenth Amendments, and under 42 U.S.C. §§ 1985 & 1986.

(such as the use of excessive force).

## III. CONCLUSION

For the above stated reasons, Defendants' motion to dismiss the complaint is overruled with respect to claims brought under the Fourth Amendment and 42 U.S.C. §§ 1981 & 1983. The motion is sustained in all other respects.[4] Also, neither Defendants O'Connor nor Doe will be dismissed at this time. As per the stipulation of the parties (doc. # 15), Defendants may file a motion for summary judgment, on the claims still viable in this action, within twenty (20) days after receipt of this Entry.

---

4. Two caveats are in order. First, Plaintiffs also alleged a violation of the Fifth Amendment in Count I of the complaint. Plaintiffs did not expressly brief how a violation of the Fifth Amendment would be cognizable, separate and apart from the other alleged constitutional violations in the complaint. Second, while Plaintiffs invoked the Court's pendent jurisdiction, they did not expressly allege any violations of state law. Accordingly, the Court assumes that no state law claims are advanced by Plaintiffs, and reserves ruling on the extent to which, if any, the complaint states a viable cause of action under the Fifth Amendment.