**Mary Ann FITZGERALD and Ernest Fitzgerald, Plaintiffs,**

**v.**

**Louis WILLIAMSON, et al., Defendants.**

**No. 84–800C(2).**

United States District Court, E.D. Missouri.

Dec. 31, 1984.

Ross Harry Briggs, St. Louis, Mo., for plaintiffs.

Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

This action is brought pursuant to 42 U.S.C. § 1983 and the principles of pendent jurisdiction. Plaintiffs maintain that their substantive and procedural due process rights were violated because they were denied custody of their daughter Wisa Rowland. Wisa Rowland is the natural daughter of plaintiff Mary Ann Fitzgerald, and the stepdaughter of plaintiff Ernest Fitzgerald. Plaintiffs also seek relief for the state common law tort of unlawful interference with the custody of a child.

Plaintiffs have sued six natural persons, all of whom are employees or former employees of the Missouri Division of Family Services (DFS). Plaintiffs maintain that defendants have systematically set about to terminate plaintiffs' parental relationship with their daughter. This action arises from a state judicial proceeding styled "In the Interest of Wisa A. Rowland," No. JU380–25J, Circuit Court of Dent County, Missouri, Juvenile Division. Plaintiffs allege that defendants circumvented the judicial process and, thereby, denied plaintiffs their constitutional rights to care for their child.

Specifically plaintiffs maintain that Wisa Rowland ran away from the home and lawful custody of plaintiffs on November 19, 1980. Later that same day Ms. Rowland appeared at the Salem Police Department and reported that plaintiff Ernest Fitzgerald had struck her with a tennis shoe on or about November 18, 1980. Following this report the police summoned defendant Michael Dye, a social service worker from the Dent County office of DFS. After conversing with Ms. Rowland and the police officer who took Ms. Rowland's report, defendant Dye requested the juvenile court of the Forty-Second Circuit to initiate child protection proceedings. Ms. Rowland was thereafter placed in a foster home by defendant Dye.

Dye then met with plaintiffs on the evening of November 19, 1980. At this interview, plaintiffs denied that Ms. Rowland had been spanked or punished in any way on November 18, 1980. Furthermore, plaintiff Mary Fitzgerald informed Dye that she believed her daughter was emotionally unstable and possibly suicidal. Mary Ann Fitzgerald stated that Ms. Rowland had been giving the family trouble for some time, and, on one occasion, had pointed a loaded .38 caliber revolver at her sister and brother and threatened to kill them.

Plaintiffs allege that Dye believed they were lying regarding the occurrences of November 18, 1980, and the misbehavior of their daughter. Defendant Dye's conclusion was, according to plaintiffs, based upon his unproven suspicions that plaintiffs had abused other children on prior occasions. According to plaintiffs, defendant Dye also assumed that plaintiffs were deliberately refusing to tell the truth because they feared DFS would remove the plaintiffs' remaining three children.

On November 21, 1980, the Honorable William Seay, Judge of the Juvenile Court for the Forty-Second Circuit of Missouri, gave oral approval to an order placing temporary legal custody of Ms. Rowland with the Dent County DFS. The order was entered *ex parte*. Thereafter followed further judicial proceedings. On November 25, 1980, a petition was filed by the Dent County Juvenile Officer, Roger Barr, alleging that Ms. Rowland had been abused by her stepfather. Plaintiffs, through counsel, filed a request for a hearing. The case was set for a hearing, but was continued with the consent of plaintiffs. On December 8, 1983, the Honorable Dorman L. Steelman, Juvenile Court Judge for the Forty-Second Judicial Circuit of Missouri "so ordered" a "Stipulation to Amendment of Judgment and Modification of Disposition" which states that:

Now comes Roger L. Barr, Chief Juvenile Officer of Dent County, Missouri

and Mary and Ernest Fitzgerald, natural parent and stepfather of Wisa A. Rowland, who are in agreement that the "FINDING OF DISPOSITION AND ORDER OF EIGHTEEN MONTH DISPOSITION" entered in this cause does not reflect the understanding reached between the juvenile officer and said parents. The parties join in together and move this Court to amend its judgment by striking the phrase "environment of Wisa A. Rowland is injurious to her welfare" and inserting in lieu thereof, "child has disobeyed the reasonable and lawful directions of her parents...."

The parties also join in together and seek modification of the disposition to reflect the agreement reached among them. The parties therefore move this court to order the Division of Family Services of Dent County, Missouri to place said child in a licensed foster home in Dent County, Missouri. It is further ordered that all efforts shall be made to reunite Wisa A. Rowland in her natural home within 30 days of this order and that Mary and Ernest Fitzgerald shall be afforded rights of visitation of at least twice a week during this period of foster home placement.

On January 3, 1984, Judge Steelman found that Ms. Rowland had reached the age of seventeen and was, therefore, no longer in need of the care and treatment which the juvenile court could provide. Judge Steelman ordered the jurisdiction of the juvenile court over Ms. Rowland terminated. Ms. Rowland, at the time this suit was instituted, resided with one Brenda Pasken.

The gravamen of plaintiffs' complaint is that "[a]s a result of the defendants' acts and omissions and due to their enticement and encouragement to Wisa A. Rowland not to return home, plaintiffs have been denied the natural and lawful custody of their child for over thirty-seven months." In addition, plaintiffs claim that "[t]he failure of defendants James Moody and Louis Williamson to train defendants Dye, Kellog, Edgar, Mugel and Swanson respecting the plaintiffs' family rights under the constitution and VAMS § 210.110–210.165 was the proximate cause for plaintiffs' deprivation."

Defendants have all moved for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). All facts must be viewed in the light most favorable to the party opposing summary judgment, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Portis v. Folk Const. Co.,* 694 F.2d 520, 522 (8th Cir.1982); *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir.1981). Although summary judgment is an extreme remedy, it is also a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case. *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978); *See also Bellflower v. Pennise,* 548 F.2d 776, 778 (8th Cir.1977).

Each of the defendants in this action is either an employee or a former employee of DFS. DFS is a state agency within the Department of Social Services, and its officers and employees are not part of the judicial branch of the State of Missouri. Section 211.031, R.S.Mo. provides that the juvenile court shall have exclusive jurisdiction for the commitment and care of children. Under § 211.251–2 the parent of any child committed to the custody of an institution or state agency may at any time petition the juvenile court for a modification or order relative to the child custody or the rights of the parents. Plaintiffs are thus afforded a panoply of procedural due process rights under the Missouri Juvenile Courts System. Only a juvenile court judge can transfer the custody of a child from a natural parent to another person or agency. See R.S.Mo. §§ 211.031, 211.041, 211.090, 211.101, 211.171, and 211.181. See also Mo.Sup.Ct.R. 111–119. Plaintiffs do not challenge the constitutionality of the Missouri procedures but rather seek to hold the defendants liable for their assert-

ed enticement of Ms. Rowland from her parents.

█ It is beyond dispute that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). This right includes the interest of a parent in the "companionship, care, custody and management of his or her children." *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Thus, plaintiffs have a protectable liberty interest, and the issue before this Court is whether that liberty was deprived without due process of law.

If the defendants had "barged into [plaintiffs'] home, seized their children, sequestered them in a secret place, and put them up for adoption without notifying the [plaintiffs] they would be guilty of violating 42 U.S.C. § 1983, no matter how regular the adoption proceeding on its face." *Ellis v. Hamilton,* 669 F.2d 510, 512 (7th Cir.1982) (opinion by Judge Posner). However, in the case at bar Ms. Rowland came to the police herself and reported that she had been struck, whereupon defendants instituted appropriate legal action in the juvenile court system. Now plaintiffs allege that defendants acted with reckless or callous indifference to plaintiffs' rights.

The Court is of the opinion that the due process procedures established by the juvenile court system of the State of Missouri, if followed, provide plaintiffs with all the due process protection to which they are entitled. If the defendants acted in substantial compliance with the procedures of the juvenile court system, then the due process rights of the plaintiffs have been adequately safeguarded. "[T]here is no denial of due process if the state provides reasonable remedies for preventing families from being arbitrarily broken up by local domestic relations officers such as the defendants in this case." *Ellis v. Hamilton,* 669 F.2d at 515.

Plaintiffs allege that they filed a "Request for a Detention Hearing" which was never held. However, this detention hearing was set and continued with the consent of all parties including plaintiffs. In addition plaintiffs on July 8, 1983, signed a notarized acknowledgment and waiver of an eighteen month dispositional hearing. Furthermore, plaintiffs also consented to Wisa Rowland being made a temporary ward of the juvenile court.

█ Plaintiffs complain that they were denied an administrative hearing by the DFS. However, only the juvenile court has authority to award custody, and thus the denial of any administrative DFS hearing could not be the proximate cause of plaintiffs being deprived of their child provided that defendants substantially complied with the procedures of the juvenile court system. The general principles of tort causation apply in § 1983 actions, *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir. 1983), and thus plaintiffs may not hinge § 1983 liability on the failure to grant an administrative hearing.

█ The cases relied upon by the plaintiff to establish a § 1983 cause of action under the facts of this case are inapposite to the case at bar. *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977) involved a case where domestic relations officers removed two children from the custody of the plaintiff, and did not seek judicial authorization for some twenty-seven months after separating the children from plaintiff. The defendants in that case, thus, usurped the established due process procedures of the juvenile court system and brought upon themselves § 1983 liability. Similarly, defendants in *Elam v. Montgomery County,* 573 F.Supp. 797 (E.D.Mo.1983) were sheriffs who were accused of coercively removing a child from the plaintiff without the benefit of a court order or determination. *Id.* at 800. In these two cases the defendants were accused of acting in a manner that did not substantially comply with the due process procedures of the juvenile court system. The factual circumstances

in the case at bar differs markedly from the two aforementioned cases. In the instant action defendants substantially complied with the juvenile court procedures, and thus plaintiffs were not deprived of any liberty interest without due process of law. Finally *Morrison v. Jones,* 607 F.2d 1269 (9th Cir.1979) simply stands for the proposition that domestic relations officers can be liable under § 1983 for their actions. *Id.* at 1275–76. Moreover, *Morrison* did not specifically address the issue of § 1983 liability when the state has established due process procedures.

After careful consideration the Court finds that defendants have shouldered their burden and have established that they are entitled to summary judgment. The Court in the exercise of its discretion will also dismiss plaintiffs' pendent state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966).