**William BOND, et al., Plaintiffs-Appellants,**

v.

**Phillip ASIALA, et al., Defendants-Appellees.**

**No. 79–1677.**

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs April 13, 1981.

Decided April 6, 1983.

Pauline R. Rothmeyer, Ann Arbor, Mich., for plaintiffs-appellants.

Allen J. Philbrick, Neil J. Juliar, Ann Arbor, Mich., for Ypsilanti, Heliker & Horace.

Walter K. Hamilton, Ypsilanti, Mich., Frank J. Kelley, Atty. Gen. of Mich., Ron Emery, Robert A. Derengoski, Sols. Gen., Lansing, Mich., for Asiala, Burns & Henderson.

Before ENGEL, Circuit Judge, and WEICK*, Senior Circuit Judge, and Rice**, District Judge.

* Judge Weick became a Senior Circuit Judge at the close of business on December 31, 1981.

** Hon. Walter H. Rice, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

PER CURIAM.

Appellants, William and Mabel Bond, are a married couple who commenced this action for damages under 42 U.S.C. § 1983, on behalf of themselves and their two children, against the City of Ypsilanti, Michigan, two members of the Ypsilanti Police Department (YPD) (and three members of the Michigan State Police (MSP). The Bonds allege that their rights under the fourth and fourteenth amendments were violated when several police officers, seeking to apprehend a suspected drug dealer for whom a valid arrest warrant had been issued, and acting upon erroneous information conveyed to them, unverified from its source, conducted a search of appellants' apartment without a search warrant. The district court, characterizing the case as "a negligence matter pure and simple . . . ,"[1] not rising to the level of a constitutional tort, granted summary judgment in favor of all defendants.

I. Background

A. Facts

In May, 1975, William and Mabel Bond were residing with their two children in apartment # 201 of a multi-unit apartment building (Southview Apts.) located at 167 South Grove Street, in Ypsilanti, Michigan. The following is a summary of the events which culminated in, what all parties agree was, a mistaken entry and search of appellants' apartment on or about May 15, 1975, by several police officers, acting without a search warrant.

On three occasions in April and May, 1975, an informant, working with the Washtenaw Area Narcotics Team (W.A.N.T.),[2] entered the Southview Apts. for the purpose of making contact with, and purchasing drugs from a suspected drug dealer named Alex Cole. Prior to each visit, the informant was wired for sound. He was also kept under visual surveillance while entering and departing the apartment building by several police officers, including appellees, Det. Sgt. William Burns of the MSP, a member of W.A.N.T. and Officer Marilyn Horace of the YPD, assigned to, but apparently not a member of W.A.N.T. None of the officers involved in the surveillance were stationed within the building and thus, none of them personally observed which of the apartment units was entered or approached by the informant.

On the informant's first visit to the building, Cole was not there. A female in one of the apartments directed the informant to a different location, where he could find Cole. The informant proceeded to the second location, where he did meet with, and purchase a quantity of drugs from Cole. On his second and third visits to Southview Apts., the informant returned to the same apartment, found Cole therein and made two additional drug purchases.

After each of the three drug transactions, the informant made handwritten notes of the incident. Therein, he recorded # 201, that is, the apartment in which the Bonds resided, as the unit he had entered. From these notes, Officer Horace then prepared type-written complaint reports. The reports prepared in connection with the first two drug transactions stated that Cole was "believed to reside at 167 Grove, Apt. # 201 . . . ."[3] The supplemental complaint report, prepared after the final transaction, simply listed Cole's address as "167 Grove, Apt. # 201."[4]

On or about May 15, 1975, Det. Sgt. Burns signed some 30 complaints for suspected drug dealers and users. A corresponding number of arrest warrants were issued, including one for Alex Cole. On that same day, a meeting was held at the Ypsilanti State Police Post for the purpose

1. Appellants' Appendix, at 45, Excerpt of proceedings before Hon. James P. Churchill, Case No. 77–70616 (E.D.Mich.) (September 28 and November 9, 1979).

2. W.A.N.T. is a cooperative drug enforcement unit, comprised of the Michigan State Police and local law enforcement agencies.

3. See, Appellants' Appendix, at 102–05.

4. See, id., at 107.

of briefing the police officers who were to be involved in the area-wide sweep to execute the arrest warrants. In all, some 50 police officers were present at this briefing, including: appellee, Dept. Lt. Phillip Asiala of the MSP, Office Commander and coordinator of W.A.N.T. activities; appellee, Det. Sgt. Burns; and appellee, Det. Sgt. (now Captain) Daniel Heliker of the YPD, assigned to assist W.A.N.T. in apprehending Cole, and the officer in charge of the police who entered and searched appellants' apartment. The record does not reveal whether appellee, Officer Horace, was in attendance. However, the final, individually-named appellee, Det. Lt. James Henderson of the MSP, Officer Supervisor of W.A.N.T., was not in attendance.

During the briefing, Det. Sgt. Burns gave verbal instructions regarding Cole's possible whereabouts. When questioned on this point, Burns testified:

> My instructions in this particular case was that we had made the buys in Apartment 201 at 167 Grove Street and it was our belief that possibly Alex Cole was there and also he had a home address of Tuttle Road—Tuttle Hill Road in Washtenaw County but he had been to 167 Grove Street on three occasions.

(Depo. of Burns, at 40). Burns further testified that the source of this information had been the W.A.N.T. investigation and the informant's notes. *Id.*

After the briefing, the police officers assigned to apprehend Cole went to the Southview Apts. Acting upon the information conveyed to them by Burns, and without making any attempt to verify the accuracy of this information, for example, by consulting the apartment mailboxes or by contacting the building manager, the officers proceeded to unit # 201, the Bonds' apartment, and knocked on the door. The officers, holding a valid arrest warrant for Cole, did not have a search warrant for apartment # 201, or for any other unit in the building.

When William Bond finally opened the door in response to repeated loud knocking,

the officers, with guns poised, pushed past him, entered the apartment and ordered everyone not to move. In the apartment at that time were William and Mabel Bond, their two children, and a third adult, who was apparently a neighbor.

Several of the officers began to search the apartment for Cole, despite Bond's protestation that there must be some mistake. When the search, which included the bedrooms and the closets failed to yield the suspect, the officers, themselves, realized that a mistake had been made. Before leaving the apartment, Det. Sgt. Heliker acknowledged the mistake to appellants, apologized for the intrusion, and then left with the other officers.

Cole was arrested later the same day in a parking lot in another part of the City of Ypsilanti as he was returning to his automobile. The supplementary complaint report, prepared after Cole's arrest, lists his address as "8509 Talladay, Ypsilanti, Michigan."[5]

The error, which lead the police officers to enter and search the Bonds' apartment, was subsequently traced back to the handwritten notes of the informant. Apparently due to an innocent transposition of numbers, the informant had consistently recorded # 201 as the unit he had entered when, in reality, he had, on all three occasions, entered unit # 102, occupied at the time by one of Cole's female friends.

There is absolutely no dispute in this case with respect to the following facts. First, the police officers, attempting to execute the valid arrest warrant on Cole, and acting upon the erroneous information conveyed to them by Det. Sgt. Burns, entered and searched the wrong apartment. Second, no attempt was ever made during the course of the W.A.N.T. investigation or surveillance of the Southview Apts. to verify whether Cole did, in fact, live there, in unit # 201, or in any other unit. Third, none of the police officers who were involved in the search of the Bonds' apartment on or about

---

5. *See,* Appellants' Appendix, at 108.

May 15, 1975, made any attempt before the incident to determine whether Cole was present in that apartment or in any other apartment within the building, as a resident or otherwise. Fourth, the officers who conducted the search of the Bonds' apartment did not have a search warrant; none had been sought or obtained for unit # 201, or for any of the other apartments within the building at 167 South Grove Street.

### B. History of the Proceedings

Appellants commenced this § 1983 action on March 14, 1977. The original party defendants included: the City of Ypsilanti, the Ypsilanti Chief of Police; "W.A.N.T. SQUAD MEMBERS and DIRECTOR of W.A.N.T. SQUAD;" the Director of the MSP-Washtenaw County Post; Det. Sgt. Heliker of the YPD, and others, unnamed. By stipulation in May, 1978, the City of Ypsilanti and its Chief of Police were dropped as defendants, and Officer Horace of the YPD and a Patrolman Wright were added as defendants (doc. # 27).

Relying on *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), appellants moved to reinstate the City of Ypsilanti and the Michigan State Police Department as defendants, on May 21, 1979 (doc. # 14). By order, dated July 18, 1979, the district court granted appellants leave to file an amended complaint, naming the City of Ypsilanti as a defendant, but denied their request to name the Michigan State Police (doc. # 55). Thereafter, on July 20, 1979, appellants filed their Second Amended Complaint, naming the current appellees as defendants, as well as Patrolman Wright, against whom the complaint was ultimately dismissed for lack of prosecution. *See,* doc. # 83.

The gravamen of appellants' Second Amended Complaint is that the mistaken entry into their apartment, upon the unverified and uncorroborated word of an informant, and the ensuing search of the apart-ment without a search warrant was negligent, and in violation of the Bonds' rights under the fourth and fourteenth amendments. More specifically, in Count I, the Bonds allege, inter alia: that appellees, Asiala, Henderson and Burns of the MSP and Horace of the YPD, should have employed safeguards to assure the accuracy of Cole's address before the entry (para. 15); that Asiala, Henderson and Burns had a duty to exercise "reasonable care to supervise those under their control, and the duty to give legally correct instructions ..." (para. 16); and that "Heliker, Asiala, Henderson and Burns had the duty to obtain a search warrant for the correct address, let alone the incorrect address ..." (para. 20). In Count VII, the Bonds allege that Asiala, "in supervisory command of all WANT squad activities ... had a duty to see that all search warrants were properly executed and that no apartment building or apartment ... was entered without a search warrant ..." (para. 51); and that because of the negligent conduct of Asiala, Henderson and Burns, the wrong apartment was entered (para. 56).

With respect to the City of Ypsilanti, the Bonds allege that "the municipality has by official act or custom continued its support and cooperation with the WANT squad without stipulation as to the care that should be used to protect innocent citizens" (para. 69); "[t]hat the Municipality, in and of itself, was negligent in allowing armed men to go into innocent persons homes without a search warrant" (para. 72); and "[t]hat the scationing [sic] of its employees going into a home without a search warrant was the carrying out of a custom of deprivation of the rights of Washtenaw County Citizens and also the Bonds" (para. 80).[6]

On June 4, 1979, the MSP defendants, Asiala, Henderson and Burns, filed a motion for summary judgment (doc. # 46), which they subsequently renewed, shortly after the Second Amended Complaint was filed. (See, doc. # 57). Thereafter, the City of

---

**6.** The Second Amended Complaint also sets forth various state claims, including intentional infliction of emotional distress, trespass, as-sault and battery, false imprisonment, invasion of privacy, and negligent performance of official duties.

Ypsilanti and YPD defendants, Heliker and Horace, also moved for summary judgment (doc. # 64). In support of their motions, all defendants stressed that appellants had not alleged gross negligence. The defendants argued that, because the mistaken entry and search of appellants' apartment amounted to nothing more than negligence, appellants had failed to state a cognizable claim for relief under § 1983. All of the individual defendants also asserted qualified immunity from liability under § 1983 on the ground that they had all acted with reasonable good faith.[7]

The City of Ypsilanti, relying on *Monell,* contended, *inter alia,* that it could not be held liable under § 1983 for the negligence of its employees under the theory of respondeat superior. Regarding appellants' allegation that the municipality had a policy or custom of sanctioning searches of homes without search warrants, the city relied on the fact that the police officers involved in the search had proceeded to appellants' apartment with a valid arrest warrant, and on the further fact that, once the search revealed that the subject of the arrest warrant was not present, the officers beat a quick retreat.

Finding merit to defendants' first contention, that simple negligence provides no basis for recovery under § 1983, the district court, ruling from the bench, granted summary judgment to all defendants. Directing its remarks to the mistake aspect of the entry and search of appellants' apartment, the court stated, *inter alia:*

> This case is simply a negligence case. It's absolutely nothing more than a negligence case. It's pleaded as such, the undisputed facts are such. I don't see any serious suggestion here either in the pleadings or the facts that are uncontested or asserted by the plaintiffs of anything touching upon any kind of willful and wanton misconduct, gross negligence, [or] willful disregard of the rights of anyone. . . . *[I]t is my belief that that statute does not create a cause of action under these circumstances.*
>
> Basically these individuals did not violate the constitution. They[8] acted negligently but did not violate the constitution.
>
> Here there isn't any question that this was a negligence matter pure and simple and *if negligence creates a constitutional tort then I am wrong but I don't believe it does.* For that reason . . . *both by pleadings as they are set forth and by the uncontroverted facts there is no valid claim here.*[9]

That the district court based its determination solely on the mistake or negligence aspect of this case and that, at least implicitly, it rejected appellants' contention that the absence of a search warrant, in and of itself, warranted relief under § 1983, as an independent violation of their fourth and fourteenth amendment rights, is made clear near the end of the court's remarks:

> There is no allegation or suggestion that they did wrong, that they conducted themselves wrongfully after they entered, *assuming that the entry for purposes of making an arrest was not a constitutional violation.*[10]

It is also clear from the court's remarks that, because it found no constitutional violation attendant with the entry and search of appellants' apartment, it had no occasion to, and did not consider whether the good faith, qualified immunity defense would

---

7. The MSP defendants, in their memorandum in support of summary judgment (doc. # 46, at 3), emphasized the fact that the informant, whose transposition error led the police officers to enter the Bond's apartment, # 201, rather than the correct apartment, # 102, had provided W.A.N.T. with reliable information "on over 50 cases during a three month period."

8. The district court does not specify exactly who, among the defendants, had been negligent.

9. Appellants' Appendix, at 44–46, Excerpt of proceedings before Hon. James P. Churchill, at 3–5, Case No. 77–70616 (E.D.Mich.) (September 28 and November 9, 1979) (emphasis added).

10. *Id.,* at 47, Excerpt, *supra,* at 5.

have been available to any or all of the defendants.[11]

## II. Refinements and Clarifications in the Law Pending Appeal

Under the legal principles available to the district court in the fall of 1979, relating to simple, isolated acts of negligence as a basis for recovery under § 1983, *see, e.g., Taylor v. Perini,* 503 F.2d 899 (6th Cir.1974); *Puckett v. Cox,* 456 F.2d 233 (6th Cir.1972); and *Striker v. Pancher,* 317 F.2d 780 (6th Cir. 1963), and relating to searches of third party residences solely on the basis of an arrest warrant, *see, United States v. McKinney,* 379 F.2d 259, 262–63 (6th Cir.1967), we would, in all probability, affirm the order of the district court granting summary judgment in favor of all defendants. However, during the pendency of this appeal, several of the legal principles bearing on this § 1983 action have undergone refinement and clarification, so much so that we believe it appropriate to vacate the order of the district court, and to remand the case for further consideration in light of these supervening developments.

To elaborate briefly, in *Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1981), the Supreme Court addressed a question upon which it had twice previously granted certiorari, and had twice found unnecessary to resolve,[12] namely, "whether mere negligence will support a claim for relief under § 1983." Preliminarily, the Court noted that "[n]othing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights." *Id.* at 534, 101 S.Ct. at 1912. Thereafter, the Court articulated certain heretofore unspecified guidelines for lower federal courts in determining whether, and in what circumstances, "§ 1983 affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind." *Id.* at 535, 101 S.Ct.

at 1912. This Court expresses no view on what, if any, direct impact *Parratt* may have on the district court's determination that the Bonds were not entitled to relief under § 1983, solely on the mistake or negligence aspect of the entry and search of their apartment. However, upon remand, the district court should re-examine its ruling in light of the guidelines set forth in *Parratt.*

Totally apart from the negligence or mistake aspect of the entry and search of the Bond's apartment which, under *Parratt,* may or may not warrant relief under § 1983, there is an even more compelling reason for vacating the order of the district court. During the pendency of this appeal, the law relating to searches based solely on an arrest warrant, a matter which had long divided the circuits, has been substantially refined and clarified by the Supreme Court in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1970) and *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In *Payton,* the Supreme Court held that, absent exigent circumstances, the fourth amendment prohibits police officers from making a nonconsensual, warrantless entry into the home of a suspect for the purpose of arresting him, 445 U.S. at 583–90, 100 S.Ct. at 1378–1380 but that "an arrest warrant founded on probable cause implicitly carries with it the authority to enter the dwelling in which the suspect lives when there is reason to believe a suspect is within." *Id.* at 603, 100 S.Ct. at 1388.

In *Steagald,* the Court considered whether an arrest warrant also carried with it the authority to enter the dwelling, not of the suspect, but of a third party not named in the warrant. Upon consideration of the two distinct fourth amendment interests protected by arrest warrants and search warrants, *see,* 451 U.S. at 211–16, 101 S.Ct. at 1647–1649, the Court held that, absent exigent circumstances or consent, the

---

**11.** *See, id.* at 46, Excerpt, *supra,* at 4.

**12.** *See, id.,* at 532, 101 S.Ct. at 1911, *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55

L.Ed.2d 24 (1978); *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

search of a third party's home without a search warrant for the purpose of apprehending the subject of a valid arrest warrant violates the right of the third party to be free from unreasonable searches, as guaranteed by the fourth amendment.

As previously mentioned, in ruling on defendants' motions for summary judgment, the district court assumed that the entry into the Bonds' apartment without a search warrant was not itself a constitutional violation. This assumption was entirely consistent with the then prevailing Sixth Circuit authority. *United States v. McKinney, supra.* However, with the clarity of hindsight, brought into focus by the Supreme Court's supervening decision in *Steagald,* we hold that the district court' assumption was erroneous. Therefore, on remand, the district court must not only reassess whether, under *Parratt,* the negligence or mistake aspect of the entry supports recovery under § 1983, it must also determine whether, and to what extent, the Bonds are entitled to redress for the violation of their fourth and fourteenth amendment rights, flowing from the entry and search of their apartment without a search warrant.

Finally, we note that, because the district court found no constitutional violation attendant with the entry and search of the Bonds' apartment, it had no occasion to, and did not reach the question which will be of primary concern to the district court on remand, that is, whether any or all of the appellees are entitled to avail themselves of the good faith, qualified immunity defense. Upon remand, this question must be considered in light of the prevailing authority, including the Supreme Court's 1981 decision in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1981), wherein the Court rejected a "construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violation," *id.* at 650, 100 S.Ct. at 1415, and held that "municipalities have no immunity from damages liability flowing from their constitutional violations." *Id.* at 657, 100 S.Ct. at 1418.

Based on the foregoing, the judgment of the district is hereby vacated, and the case remanded for further consideration in light of *Parratt, supra, Steagald, supra,* and *Owen, supra.*