Sharon **MELSON**, et al., Plaintiffs,

v.

The **KROGER COMPANY**, et al., Defendants.

No. C–3–82–061.

United States District Court, S.D. Ohio, W.D.

Nov. 4, 1983.

---

Janice L. Jessup, Dayton, Ohio, for plaintiffs.

Paul J. Winterhalter, Edward B. Neuman, Asst. City Atty., Dayton, Ohio, for defendants.

## DECISION AND ENTRY SUSTAINING IN PART, AND OVERRULING IN PART, DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; FURTHER PROCEDURES SET

RICE, District Judge.

Plaintiffs brought this civil rights action against various Defendants, alleging that

their constitutional rights had been violated as a result of a warrantless search of their persons (and other actions) by at least two City of Dayton police officers, near the parking lot of a Kroger Company store. In a prior decision, published at 550 F.Supp. 1100 (S.D.Ohio 1982), this Court sustained in part, and overruled in part, Defendants' motions to dismiss the complaint, and directed Defendants to file motions for summary judgment. Reference should be made to that decision for a greater factual and legal background on this case. Defendants did file motions for summary judgment, pursuant to Fed.R.Civ.P. 56, which are now ripe for decision (Docs. # 22 & 24).

■■■■ Under Rule 56, Defendants' motions can only be sustained when the movants demonstrate, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the parties opposing the motions. Should such a motion be filed and properly supported, the opposing parties may not rest on the pleadings, but must present sufficient evidence to demonstrate that there is a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

With these standards in mind, the Court considers the grounds advanced in support of the pending motions.

## I. *Liability of Defendant O'Connor*

Plaintiffs seek to hold (former) Chief of Police Grover O'Connor liable for his allegedly having improperly trained the police officers involved in the aforementioned confrontation. Previously, this Court held that the allegations in the complaint were sufficient to survive a motion to dismiss. 550 F.Supp. at 1103–04. Therein, the Court noted that the leading case on point is *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). In *Hays*, the Sixth Circuit held that mere allegations of "negligent" training or hiring were insufficient to hold a supervisory official liable under 42 U.S.C. § 1983. *Id.* at 872–73. Such an official could be

> held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.

*Id.* at 874.

Defendants have now supplemented the record with the affidavits of Barbara Bent and James Wheeler, the two police officers involved in the confrontation,[1] and that of Chief O'Connor. (Doc. # 29, Exhs. F–H). Those affidavits spell out in some detail the length and type of training given police officers by the City of Dayton. Such instruction included techniques on how to conduct investigatory stops of motor vehicles, how to use firearms in such a situation, and how to comply with the civil rights law. In light of these unchallenged averments, Plaintiffs simply cannot meet the *Hays* test of demonstrating a "complete failure" of training, or "reckless or grossly negligent" training, so as to hold Chief O'Connor liable.[2]

---

**1.** In their complaint, Plaintiffs allege that *four* police officers were involved: Bent, Wheeler, Bogan, and "First John Doe." However, the Rule 56 materials on record indicate that Plaintiffs cannot agree on the number. *Cf.* Deposition of Alberta Bonner at 25 (four police involved) *with* Deposition of Jerry Trice at 47 (two police involved). While Bogan was on the scene, he avers in his affidavit that he stayed in a squad car the entire time. Doc. # 29, Exh. K. Plaintiffs have never identified the "John Doe" Defendant. Therefore, for convenience, the Court will assume that only Officers Bent and Wheeler were involved.

**2.** Plaintiffs also argue that the *Hays* test, holding that mere negligent training cannot hold supervisors liable, is improper in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), where the Supreme Court held that, under certain circumstances, liability under 42 U.S.C. § 1983 could be predicated on mere negligent conduct. *See, Bond v. Asiala*, 704 F.2d 309, 314 (6th Cir.1983) (per curiam); *Watson v. McGee*, 527 F.Supp. 234, 238 (S.D.Ohio 1981).

Plaintiffs argue that the legality of the training procedures cannot be ruled upon until the legality of Officers Bent and Wheeler's conduct is resolved, since they were purporting to follow the procedures they were taught. If Bent and Wheeler acted unconstitutionally, Plaintiffs contend, their *training* must have been improper.

■ The Court cannot agree with this logic. To be sure, the ultimate acts by police officers have some relevance to characterizing the training they received. Moreover, if the conduct is *not* found to be improper, it would seem to be difficult, if not impossible, to predicate liability *only* on improper training. Examining such training, after all, is only a formula to link supervisors to the acts of their subordinates. *See, Rogers v. Rulo,* 712 F.2d 363, 366 (8th Cir.1983). *See also,* footnote 2, *supra.* But it does not follow that the subordinate's improper conduct automatically establishes the illegality of the training. The *Hays* test makes no mention of a linkage to the subordinate's conduct. In other words, under *Hays,* training and the subordinate's conduct are separate concepts which can be dealt with separately. Since Plaintiffs have profered no Rule 56 materials which in any way contradict the aforementioned affidavit, they have not met the *Hays* test, and summary judgment is appropriate in favor of Defendant O'Connor.

## II. *Liability of Defendants Kroger Company and Jackson*

■ In any § 1983 action, Plaintiffs must allege and prove both that they were deprived of rights under the Constitution or laws of the United States, and that Defendants deprived them of these rights "under color of" law. *See, Bier v. Fleming,* 717 F.2d 308 at 310–311; (6th Cir. 1983); *Dunn v. State of Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). Here, Plaintiffs allege that Earl Jackson, the manager of the Kroger store in question, and his employer, acted in concert with the police officers and are thus responsible for the constitutional violations. Those Defendants argue that neither requisite of section 1983 liability applies to them: they are *private* actors, not functioning "under color of law," and even if they were, their actions were entirely "reasonable."

■ While the issues are close ones, the Court cannot agree with either position, as a matter of law on a motion for summary judgment. With regard to the first argument, it is settled that Defendants who are not state officials may nevertheless be liable under § 1983 if they "jointly participated" in the actions of state officials. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 931, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982); *Coon v. Froehlich,* 556 F.Supp. 115, 118 (S.D.Ohio 1983). *See also, Bier v. Fleming, supra,* at 311. In circumstances similar to this case (i.e., police action as a result of store manager complaints), courts have held that the "joint participation" test is met if the managers and police had a "customary plan" which resulted in detention of suspects (or other action). *See, Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.,* 673 F.2d 771, 772 (5th Cir.1982) (per curiam); *El Fundi v. Deroche,* 625 F.2d 195, 196 (8th Cir.1980); *Smith v. Brookshire Bros., Inc.,* 519 F.2d 93 (5th Cir.1975) (per curiam), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976).

■ In this case, there is *some* evidence on record that such a "customary plan"

---

*See also,* Friedman, *Parratt v. Taylor: Opening and Closing the Door on Section 1983,* 9 Hastings Const.L.Q. 545, 566 & n. 144 (1982) (adopting Plaintiffs' position regarding *Hays* ).

It is true that *Hays* did not cite or distinguish *Parratt.* But the challenged holding of *Hays* was setting a standard to hold supervisors liable, i.e., linking them to the acts of subordinates, since respondeat superior is not viable in § 1983 actions. *Jones v. Denton,* 527 F.Supp. 106, 109 (S.D.Ohio 1981) (citing cases). In any event, the Court need not rule definitively on Plaintiffs' effort to discredit *Hays,* since they have proffered no facts which make out the training of the defendant police officers to be improper under *any* standard of review.

existed. Earl Jackson has stated that he has given information to the police in the past, which has led to arrests of shoplifters. Deposition of Earl Jackson, Doc. # 29, Exh. E, pp. 5–6, 21. The affidavits of the police officers make no mention of such a "plan" (possibly because different officers have been involved each time). While relatively little to go on, Jackson's statements present a triable issue of his involvement with the police in the incident in question. *See, Coon v. Froehlich,* 556 F.Supp. at 118 ("unanswered questions of fact" regarding proper characterization of private actor's conduct can present triable issues); *Green v. Francis,* 705 F.2d 846, 850 (6th Cir.1983) (per curiam).

■ With regard to Defendant's second argument, the Court simply cannot hold that, even conceding Jackson's status as a "joint participant," his actions in calling the police were entirely "reasonable" and, indeed, *required* by the law. As will be developed shortly, it is not entirely clear if Jackson's efforts were "reasonable;" among other things, his information to the police proved to be quite inaccurate, calling into some question the adequacy of his investigation. In any event, if Jackson is found to have "jointly participated" with the police officers, and if the latter's conduct is found to be unconstitutional, Jackson might be required to bear some responsibility for such conduct, depending on the extent of his participation. *Cf. Green v. Francis, supra; Dobson v. Camden,* 705 F.2d 759 (5th Cir.1983) (both cases addressing apportionment of liability for joint tortfeasors in § 1983 actions).

For these reasons, summary judgment in favor of the Defendants Jackson and Kroger Company would not be appropriate,[3]

and, accordingly, said motion urged in their behalf is overruled.

### III. *Liability of Officers Bent and Wheeler*

Officers Bent and Wheeler obviously do not contest the "state action" prong of § 1983 liability. Instead, they argue that their actions did not invade any constitutional rights of the Plaintiffs. In particular, they contend that their initial investigation and seizure of the Plaintiffs and the car comported with the Fourth Amendment, that they took no "excessive force" against the Plaintiffs, and that any search of the car or of the Plaintiffs themselves were undertaken with their consent.

■ The Court agrees with Plaintiffs that each of these arguments presents triable issues of fact. As this Court observed in its earlier decision,

[t]he general standard against which the officers' conduct must be measured is whether their stop of the car and investigation of possible criminal behavior was "reasonable" and "appropriate" in light of all the circumstances and the facts known by the police at the time.

550 F.Supp. at 1105. It is not clear that Defendants' initial investigation, and subsequent stop of the car, was "reasonable" and "appropriate." In his deposition, Jackson stated that several (unidentified) customers told him that some people outside the store were asking for money and that someone in a car parked in the Kroger's lot had a gun. He also went outside the store to personally observe Plaintiffs' car in the parking lot. He reported these allegations to the police by phone.

In their affidavits, Officers Bent and Wheeler state that they "were told to han-

---

**3.** While overruling Jackson's and Kroger's motion, the Court notes that it is *not* accepting Defendants' argument that if the Court overrules the motion by the police officers, the other motion should also be denied, since Jackson was the instigating cause of the whole affair. Motion for Summary Judgment, Doc. # 24, p. 22. The latter statement is true, but Defendants cite no authority for the proposition that Jackson having "caused" the incident makes him

automatically liable for the *other* Defendants' misconduct (if any). *Cf. Arnold v. IBM Corp.,* 637 F.2d 1350, 1355–56 (9th Cir.1981) (discussing causation in § 1983 actions). Defendants' argument partakes of some sort of "right of contribution" theory, akin to tort law, which has not been accepted in § 1983 actions. *See, Coleman v. Casey County Bd. of Educ.,* 686 F.2d 428, 429–30 n. 1 (6th Cir.1982).

dle the situation as if a robbery was in progress." (Affiants do not state *who* told them to react in such a manner.) From the depositions and affidavits on record, it appears that Plaintiffs' car began to pull out of the parking lot shortly before, or upon, the arrival of the police officers on the scene. The officers, apparently thinking that robbery suspects might be escaping, then stopped the car on a street next to the parking lot. This "investigation" yielded inaccurate information: Plaintiffs, in fact, did not engage in any sort of unlawful activity (indeed, they had just lawfully purchased some items at the Krogers), were not asking for money, and did not have a gun in the car. (Defendants seem to argue that the unidentified Kroger customer mistook Plaintiff Jerry Trice's harmonica for a gun.)

■ As Defendants point out, the police officers did not need probable cause to stop Plaintiffs' vehicle; under the Fourth Amendment, they had authority "to make a forcible stop of a person when the officer has reasonable, articulate suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, — U.S. —, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) (citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). In the instant case, the Court cannot hold at this time, as a matter of law, that Officers Bent and Wheeler had a "reasonable, articulate suspicion" justifying their stopping of Plaintiffs' car. On the record as it stands, it appears that Bent and Wheeler conducted no investigation, as such. While police officers may, of course, receive and act upon information from private citizens, *see, Hernandez, supra*, 673 F.2d at 772; 3 W. LaFave, Search and Seizure, § 9.2 at 37 (1978), that does not mean that the officers possessed a "reasonable, articulate suspicion" of criminal activity. Here, the officers only received information from Jack-

son, who stated that he told the officers that he did not personally observe the alleged wrongdoing by Plaintiffs. Armed with that hearsay information, the officers immediately proceeded to stop the car when it pulled out of the lot. Arguably, the officers should have taken some steps to determine the accuracy of the information; Plaintiffs were taking no life-endangering actions by merely pulling out of the lot, and Defendants do not articulate why *immediate* action on their part was necessary. *Cf. Hernandez, supra* (suggesting that officer's failure to investigate would show reliance on "customary plan" by the store manager).[4]

■ Even if the Court were to accept Defendants' position that the initial stop of the car was lawful, it does not follow that their remaining actions were also lawful. *See*, 550 F.Supp. at 1105. Plaintiffs contend that Officers Bent and Wheeler used "excessive force" in effecting an exit and "pat-down" search of the occupants of the car. An "excessive force" case under the civil rights laws is analogous to an assault and battery case under state criminal law. Whether such force was unlawfully severe and excessive will typically be based on an objective or "reasonable" examination of all the facts and circumstances. *Elam v. Montgomery County*, 573 F.Supp. 797 at 805 (S.D.Ohio 1983); *Soto v. City of Sacramento*, 567 F.Supp. 662, 674–75 (E.D.Cal. 1983).

In this case, Plaintiffs allege in their complaint, and state in their depositions, that Officers Bent and Wheeler violently "pushed" them up against the car to effect a pat-down search, while pointing shotguns at their heads. *See*, Depositions of Mary Trice at 27–28, 31–32, of Sharon Melson at 22, 25, and of Alberta Rita Bonner, at 33. They also allege that the officers "manhandled" Jerry Trice, the legally blind Plaintiff, and "forced" his arm up, even *after*

---

**4.** In its earlier decision, the Court observed that, based only on the allegations in the complaint, Defendants were "perhaps on strongest ground in asserting that the initial stop and request that Plaintiffs exit the car were lawful." 550 F.Supp.

at 1105. Plaintiffs correctly argue that this language is, in effect, dicta, and does not control the Court's disposition of the motion for summary judgment.

the officers were told that Trice's arm was injured. *See*, Depositions of Mary Trice at 31–33, 40, 55, and of Jerry Trice, at 23, 24. In contrast, Officers Bent and Wheeler admit in their affidavits that they drew a revolver and shotgun, respectively, but deny actually "pointing" the guns at Plaintiffs in a threatening manner, or pushing or assaulting Plaintiffs in any manner. Their version is corroborated by Jackson, Deposition at 15–17. They also deny any advance knowledge of the condition of Jerry Trice's arm. Plaintiffs' version of these actions could arguably support a finding of unnecessary and excessive force, as the Court suggested in its earlier decision. 550 F.Supp. at 1105. The obvious factual disputes between the parties precludes the granting of summary judgment in favor of the Defendants on this issue.

■ Finally, Plaintiffs contend that the officers conducted an unlawful search of the car and their purses. Defendants contend that there was "probable cause" for the search and that, in any event, Plaintiffs gave their consent to the search, both factors being exceptions to the warrant requirement of the Fourth Amendment. *United States v. Place*, 103 S.Ct. at 2641. However, triable issues of fact remain to determine the validity of each exception. With regard to consent, the four depositions of the Plaintiffs in the record conflict as to whether they actually gave permission for a search. *Cf.* Depositions of Sharon Melson at 28 (no permission given) *and* of Alberta Bonner at 28 (same) *with* Deposition of Jerry Trice at 43 (permission given). In any event, Plaintiffs insist that any verbal "consent" to a search they might have given was vitiated by the coercive atmosphere. In these circumstances, the voluntariness of consent is determined by examining "the totality of all the surrounding circumstances." *Elam v. Montgomery County, supra,* at 803 (quoting, *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973)). Given the parties' conflicting versions of the absence or presence of "excessive force," there remain genuine issues of ma-

terial fact regarding the absence or presence of consent.

With regard to the probable cause exception, the Court earlier observed that "exigent circumstances" can justify a warrantless search. 550 F.Supp. at 1105. *See also, United States v. Place,* 103 S.Ct. at 2641. In this case, the nature of the "exigent circumstances" is clouded, given (as the Court outlined above) the officer's failure to conduct an investigation, and the disputes over their conduct once the car was stopped. Once again, the Court simply cannot hold, as a matter of law, that there was "probable cause" justifying the warrantless search.

■ For all of these reasons, the Court overrules Defendants' motion for summary judgment, as brought by Defendants Bent and Wheeler.

## IV. *Remaining Issues*

Several miscellaneous issues must be addressed by the Court. The motion for summary judgment, to the extent it is brought by Officers Bogan and "John Doe," is well taken, given Plaintiffs' failure to demonstrate that Bogan was involved in the incident at all, or to identify the "John Doe" Defendant. *See*, footnote 1, *supra*.

■ The official Defendants also argue that even assuming they committed civil rights violations, they are entitled to "good faith" immunity. Such qualified immunity is now governed by the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) (footnote omitted), and "is an affirmative defense which must be pleaded and proved by the defendant official." *Alexander v. Alexander,* 706 F.2d 751, 754 (6th Cir.1983). A ruling on immunity would be premature at this point. Until the disputed facts involving the incident are resolved at trial, it would be impossible for the Court to make an "objective" appraisal of the Defendants' conduct, and to conclude that such immunity has been es-

tablished as a matter of law. *See, Elam v. Montgomery County, supra*, at 805.

Plaintiffs also alleged that Defendants' actions were undertaken with racial animus, allegations sufficient, the Court previously held, to state a cause of action under 42 U.S.C. § 1981. 550 F.Supp. at 1106. The Court added that Plaintiffs will need to "demonstrate, at some point later in this litigation, that the officers were animated by racial motives." *Id.* Plaintiffs have failed to so demonstrate. In their affidavits, officers Bent and Wheeler, not unexpectedly, flatly deny that they took any acts due to the race of Plaintiffs. In their depositions, Plaintiffs, when asked, pointed to no specific facts supporting their allegations, although Sharon Melson felt that the police officers treated them like "niggers." Deposition at 21.

In a civil rights case, racial animus can be proved by direct *or* circumstantial evidence. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). Frequently, plaintiffs will need to rely on the latter, since defendants rarely proclaim their intent. It follows that issues of intent, involving as they do disputed issues of fact, are rarely susceptible of resolution on motions for summary judgment. *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir.1981) *reh'g denied*, 668 F.2d 878 (6th Cir.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982); 10A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, §§ 2730, 2732.2 (1983). However, summary judgment on the issue of intent is not impossible. In the many cases denying summary judgment in § 1981 actions, courts emphasize that Plaintiffs had presented *some*, prima facie proof of racial animus. *See, e.g., Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86–87 (5th Cir. 1982) (employment case). In this case, Plaintiffs have simply not advanced or referred to any facts in the record which support their § 1981 claims. Conclusory allegations of racial motivation will not suffice. *Nash v. City of Oakwood*, 90

F.R.D. 633, 636 (S.D.Ohio 1981). Nor did Ms. Melson refer to any facts which would support her claim that Bent and Wheeler treated Plaintiffs as "niggers." Accordingly, summary judgment is appropriate in favor of all the Defendants on the § 1981 claim. *See, Smith v. Pan Am World Airways*, 706 F.2d 771, 773 (6th Cir.1983) (per curiam) (affirming district court granting of summary judgment on issue of intent in § 1981 employment case; "... there is no evidence in the record, apart from [plaintiff's] conclusory statement ..., of any racial animus or discriminatory purpose on [defendants'] part.").

Finally, in the earlier discussion, the Court noted that Plaintiffs had mentioned a Fifth Amendment violation and pendent jurisdiction in their complaint, but had failed to advance any Fifth Amendment or pendent claims in their memoranda. 550 F.Supp. at 1107 n. 4. Plaintiffs' most recent memoranda have also failed to advance any such claims, and the Court will assume that Plaintiffs have abandoned such claims in this litigation.

## V. *Conclusion*

Based on the foregoing reasons, the Court overrules the motion for summary judgment (Doc. # 22) by Defendants Jackson and Kroger Company. The motion for summary judgment (doc. # 24) by the remaining Defendants is sustained with respect to Defendants O'Connor, Bogan, and "John Doe," and overruled with respect to Defendants Bent and Wheeler. However, judgment will be entered in favor of all the Defendants in the § 1981 claim. On the question of liability, the triable issues in this case will principally be the nature of Jackson's "joint participation" with the officers, the alleged use of "excessive force" by Officers Bent and Wheeler, and whether or not the investigative stop and search of the car by those officers was conducted in a coercive atmosphere, and was justified by all of the facts and circumstances in the case. Depending on the facts established at trial, the defense of qualified immunity

may be available to the Defendants Bent and Wheeler.[5]

Counsel will take note that a conference call will be held at 8:20 a.m. on Monday, November 14, 1983, to set a trial date and discuss further procedures in this case.

See also 509 F.Supp. 1226.

---

**5.** It appears that the immunity defense would *not* be available to the non-official Defendants, Jackson and Kroger Company. *See, Dennis v.* *Sparks,* 449 U.S. 24, 27–29, 101 S.Ct. 183, 186–187, 66 L.Ed.2d 185 (1980); *Macko v. Bryon,* 641 F.2d 447, 449–50 (6th Cir.1981) (per curiam).