Albert FISHMAN

v.

The Hon. Salvatore De MEO, et al.

John J. McCREADY, et al.

v.

The Hon. Salvatore De MEO, et al.

Ralph CALVANESE and Jack Brody

v.

The Hon. Salvatore De MEO, et al.

Joseph CALIGURI, et al.

v.

The Hon. Salvatore De MEO, et al.

Brian SIERACKI

v.

The Hon. Salvatore De MEO, et al.

Thomas NILAN

v.

The Hon. Salvatore De MEO, et al.

Vicki FREELING, et al.

v.

The Hon. Salvatore De MEO, et al.

Civ. A. Nos. 81–2660, 81–2889, 81–3769, 82–2333, 82–5489, 83–2165 and 84–3150.

United States District Court,
E.D. Pennsylvania.

Jan. 8, 1985.

See also 590 F.Supp. 402.

John B. Day, Philadelphia, Pa., for defendant/cross-claim plaintiff City of Philadelphia.

Louis W. Fryman, Philadelphia, Pa., for defendant/cross-claim defendant Republican City Committee.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On December 5, 1984, I entered an Order denying the Republican City Committee's motion to dismiss the City of Philadelphia's cross-claim. This memorandum explains the rationale of that Order.

In these seven consolidated cases, certain employees and former employees of the Philadelphia Traffic Court allege that they were fired or harrassed because of their political or union affiliations. The defendants include a number of individuals and institutions alleged to have been responsible for these employment practices. Among these are the City of Philadelphia ("City") and the Republican City Committee ("RCC"). The City filed a cross-claim for indemnity and/or contribution against the RCC, alleging that the City's liability, if any, was secondary to that of the RCC, which the City alleges had actual control over employment decisions at Traffic Court. The RCC moved to dismiss, on the ground that neither indemnity nor contribution is available in an action brought under 42 U.S.C. § 1983.

As a preliminary matter, I must determine what law applies to the question whether cross-claims for contribution [1] are

---

1. The City's cross-claim seeks, alternatively, indemnity and contribution. The bulk of the discussion in the briefs and in this memorandum concerns the availability of contribution, which is presumably the more broadly available remedy. The RCC does argue, briefly, that whether or not contribution is available, indemnity cannot be, because the sort of passive fault that gives rise to an indemnity claim is inconsistent with municipal liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* holds that municipalities cannot be liable in § 1983 actions under a theory of *respondeat superior.* Thus, under *Monell,* a § 1983 plaintiff suing a municipality must show that allegedly improper actions of municipal agents arise out of a municipal custom or policy. See 436 U.S. at 690–94, 98 S.Ct. at 2035–37.

*Monell* does not discuss the viability of municipalities' cross-claims against codefendants in § 1983 cases. It would appear to foreclose such claims only if the standards it sets for municipal liability are inconsistent with the prerequisites for an indemnity claim under the substantive law of indemnity. Since neither party has discussed what that substantive standard might be, I choose not to resolve the question at this time. Should the RCC wish to renew its motion with regard to the indemnity claim only, it is free to do so.

available to defendants in § 1983 actions. The RCC contends that federal law governs this question. The City, on the other hand, maintains that a right of contribution is granted by Pennsylvania law.

■ Analysis of this threshold question begins and ends with the Third Circuit's decision in *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir. 1981). Plaintiffs in *Miller* brought a § 1982 action against the owners and rental agents of an apartment which plaintiffs alleged was denied them on the basis of race. Plaintiffs settled with the rental agents for $1821, and proceeded to trial against the owners. At trial, plaintiffs recovered some $29,451 plus attorneys' fees; the district court reduced this amount by the amount of the earlier settlement. On appeal, the defendants argued that the damage award should have been reduced by the *pro rata* share of the rental agents' liability, and not just by the settlement amount. The Court of Appeals for the Third Circuit held that federal law applied, and that the district court's *pro tanto* reduction was the correct result.

Although the precise question before the court in *Miller* was the effect of settlement on non-settling defendants, the court found that question "intertwined" with the question of contribution among joint tortfeasors, *id.* at 105 n. 5, and the court's choice-of-law discussion referred to contribution rules generally and not merely to rules governing settlement offsets. *See id.* at 106–08. The court found that the availability of contribution was to be determined in the first instance by federal law. *Id.* at 107–08. Only if no right of contribution arose as a matter of federal law would state-law rules of contribution be applied under 42 U.S.C. § 1988. *Id.; see Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). *Miller* thus requires that in the instant case this court consider whether federal law creates a right of contribution in § 1983 cases.

*Miller* speaks to this substantive question as well. In the course of analyzing the settlement offset issue, the Court of Ap-

peals discussed the more general question whether federal law created a right of contribution in civil rights actions. The court reviewed its then-recent decision in *Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir. 1980), *vacated*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), which held that, as a matter of federal common law, contribution was available in actions brought under Title VII. *Miller*, 646 F.2d at 107 (discussing *Glus, supra*). The court then stated that "[n]othing in this case suggests that a different analysis or a different result should follow in civil rights cases." *Id.*

The Court of Appeals has thus stated that (1) the issue of the availability of contribution is a federal-law issue, and (2) there is a federal common-law right of contribution in civil rights cases. Ordinarily, such a clear directive from a higher court would resolve a motion such as the one before me without the need for any extended analysis. In this case, however, the RCC argues that the substantive discussion in *Miller* is no longer good law, having been undermined by the Supreme Court's decision in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). *See also Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

In *Northwest Airlines*, decided after the Third Circuit's decisions in *Glus* and *Miller*, the Supreme Court confronted the question whether contribution was available to defendants in suits arising under Title VII and the Equal Pay Act. The Court held that (1) neither the language, nor the structure, nor the legislative history of either statute supported the inference that Congress intended to imply rights to contribution, 451 U.S. at 91–95, and (2) given the carefully integrated remedial schemes which, in both instances, Congress had put together, it would be institutionally impertinent for the federal judiciary to undertake to improve on Congress' careful handiwork by creating rights of contribution as exercises of judicial authority to

develop interstitial federal common law causes of action. *Id.* at 95–98. The *Glus* decision, on whose Title VII analysis the Third Circuit had relied in *Miller,* was subsequently vacated by the Supreme Court. *Retail, Wholesale & Dep't Store Union v. G.C. Murphy Co.,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981).

*Northwest Airlines* did not rule on the availability of contribution in cases arising under statutes other than Title VII and the Equal Pay Act. Nor is *Northwest Airlines* a general condemnation of the federal common law method; to the contrary, the Court expressly acknowledged that "[b]roadly worded constitutional and statutory provisions necessarily have been given concrete meaning and application by a process of case-by-case judicial decision in the common-law tradition." 451 U.S. at 95, 101 S.Ct. at 1582. Moreover, the Court pointed out that the right of contribution, not historically available at English common law, has become a familiar ingredient of American state remedial systems both by statute and by judicial decision.[2] The Court's determination that contribution was unavailable to defendants in Title VII and Equal Pay actions, stemmed from the premise that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* at 97, 101 S.Ct. at 1583–84. The RCC does not contend, nor could it, that section 1983 creates the sort of

detailed structure of statutory remedies that is contained in Title VII or the Equal Pay Act. Thus, neither the holding nor the rationale of *Northwest Airlines* requires the conclusion that contribution is unavailable to section 1983 defendants.[3]

■ The Supreme Court's decision in *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), issued shortly after *Northwest Airlines,* supports this assessment. In *Texas Industries,* the Court faced the question whether a contribution remedy was available to defendants in private Sherman Act lawsuits. The Court concluded that no such remedy could be inferred from the Sherman Act, 451 U.S. at 639–40, 101 S.Ct. at 2066, and declined to create such a remedy as a matter of federal common law on the ground that the antitrust statutes establish a "detailed and specific" scheme of remedies for antitrust violations. *Id.* at 643–46, 101 S.Ct. at 2068–69. The Court contrasted the remedial provisions of the antitrust laws with the liability provisions of those same statutes, noting that with regard to the latter, the federal courts had broad power to shape doctrine within the statutory umbrella. *Id.* at 643, 101 S.Ct. at 2068. *Texas Industries,* like *Northwest Airlines,* thus fails to resolve the question whether contribution ought to be available as a matter of federal common law in actions brought under section 1983, a statute lacking the detailed remedial provisions of the antitrust laws or

**2.** *See* 451 U.S. at 87 & n. 17, 101 S.Ct. at 1578 & n. 17 (noting that, although contribution was not generally available at common law, thirty-nine states recognize the remedy, and ten of these adopted it through judicial decision).

**3.** District courts in two other circuits have intimated that *Northwest Airlines* casts some doubt on the availability of contribution in civil rights cases. *See* Judge Bratton's opinion in *Valdez v. City of Farmington,* 580 F.Supp. 19, 20–21 (D.N.M.1984); and *cf. Melson v. Kroger Co.,* 578 F.Supp. 691, 696 n. 3 (S.D.Ohio 1983) (dicta). However, neither of these cases supports the proposition that *Northwest Airlines* forecloses contribution in § 1983 cases. After a brief discussion of the Supreme Court's reasoning and decision in *Northwest Airlines,* Judge Bratton

concluded that "[t]here exists no clearly established federal authority on the question of whether, or under what circumstances, a right of contribution may exist among § 1983 co-defendants." *Valdez, supra,* 580 F.Supp. at 20–21. And while the court in the *Melson* case stated in dicta that contribution "has not been accepted in § 1983 actions," 578 F.Supp. at 696 n. 3, the case cited to support that proposition expressly reserved decision on the question whether contribution was available in actions brought under § 1983. *See Coleman v. Casey County Board of Education,* 686 F.2d 428, 429–30 n. 1 (6th Cir. 1982) (noting that the Supreme Court had disapproved the remedy in cases brought under Title VII, the Equal Pay Act or the federal antitrust laws).

of Title VII. Accordingly, I conclude that neither *Northwest Airlines* nor *Texas Industries* of its own force robs *Miller* of its authority. Unless and until the Third Circuit rules otherwise, *Miller*'s pronouncement that contribution is available in civil rights cases is binding on district courts in this Circuit.[4]

---

4. In concluding that *Miller* is dispositive of the issues before me, I recognize that Miller was a § 1982 case, not a § 1983 case, but I can see no ground for suggesting a distinction between those categories of cases for contribution purposes. I also recognize that *Miller*'s discussion of the availability of contribution in civil rights cases was technically dicta, in that the issue before the court involved not contribution as such, but rather the effect of a settlement on the amount which a non-settling defendant might be required to pay in damages.

It would nevertheless be strange to read *Miller* to have no bearing on the contribution issue before me now, when the *Miller* court believed

the contribution question and the settlement offset question "so intertwined that they cannot sensibly be treated in isolation." 646 F.2d at 105 n. 5. *Miller* analyzed the settlement offset issue in terms of the broader contribution question, and appeared to assume that contribution would be available in any civil rights action to the same extent as in *Glus. Id.* at 107–08. Only *after* concluding that the availability of contribution in civil rights actions should follow *Glus'* reasoning did the court decide how that reasoning affected the question of settlement offsets. *Id.* at 108–09. In my view, the Third Circuit's analysis in *Miller* therefore compels the finding that contribution is available in § 1983 actions.